Jason B. Lattimore
**The Law Office Of**
**JASON B. LATTIMORE, ESQ. LLC**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: (973) 998-7477
Facsimile: (973) 264-1159

*Attorneys for Plaintiff,*
*Interlink Products International, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERLINK PRODUCTS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> BBC INNOVATION CORPORATION (d/b/a BIO BIDET), <br><br> Defendant. | Case No: <br> CIVIL ACTION <br><br><br> **COMPLAINT &** <br> **JURY TRIAL DEMAND** |

Plaintiff, Interlink Products International, Inc. (hereinafter "Interlink" or "Plaintiff"), by and through its undersigned attorney, hereby complains of Defendant, BBC Innovation Corporation ("Defendant"), as follows:

**THE PARTIES**

1.  Plaintiff is a New Jersey corporation with its principal place of business at 1315 East Elizabeth Avenue, Linden, NJ 07036.

2.  On information and belief, Defendant is an Illinois Corporation with its principal place of business at 205 Berg Street, Algonquin, IL 30102.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the claims alleged pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331, and also has jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) in that the state law claims alleged are so related to the claims over which the Court has original jurisdiction that they form part of the same case. Further, this Court has jurisdiction over the claims pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000 and complete diversity exists among the parties.

4. This Court has personal jurisdiction over Defendant in that it does business regularly in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

**NATURE OF THE CLAIMS**

6. This case arises out of Defendant's false advertising of its illegal showerhead products and unfair competition with Interlink. Interlink and Defendant are competitors in the showerhead market. For environmental purposes, federal law caps the permissible flow rate of showerheads at 2.5 gallons per minute (gpm) of water at 80 pounds per square inch (psi) of water pressure. In order to gain access to exclusive online retail platforms, to deceive consumers into purchasing its products, and to gain an unfair competitive advantage, Defendant misrepresents in its product advertising and promotional materials that its products have a 2.5 gpm flow rate at 80 psi when, in fact, they far exceed that flow rate in violation of a host of statutory and regulatory provisions. Interlink asserts claims against Defendant for false advertising under the Lanham Act, unfair and deceptive practices under N.J.S.A. § 56:8-2 *et seq.*, common law unfair competition and tortious interference with prospective economic advantage.

## FACTS

7. Plaintiff, Interlink, is a New Jersey based research & development company specializing in the development, manufacturing and marketing of innovative consumer and professional healthcare products in the shower and bath, personal care and cleaning categories. The company was founded in 1996 and built on conceptual and technological innovation, high product quality and excellence in customer service.

8. Interlink's products include several lines of showerheads that can be purchased from various online sources, including Groupon.com, Wayfair.com, Overstock.com, and Amazon.com (collectively, the "Online Marketplaces"). Interlink's products can also be purchased from major retailers such as Wal-Mart and Bed Bath & Beyond.

9. Defendant competes directly with Interlink for sales of showerheads to online consumers, including those consumers who purchase products through the foregoing Online Marketplaces. On information and belief, Defendant also competes with Interlink for showerhead sales through other market channels.

<u>The Energy Policy Act of 1992</u>

10. The Energy Policy Act of 1992, and the regulations promulgated pursuant thereto (collectively the "EP Act") require all showerheads manufactured after January 1, 1994 have a maximum flow rate of "2.5 gallons per minute (9.5 liters per minute) when measured at a flowing pressure of 80 pounds per square inch gage (552 kilopascals)." 10 CFR Part 430.32(p); 42 U.S.C. § 6295(j). The EP Act also requires all showerheads to "meet the requirements of ASME/ANSI A112.18.1M-1989, 7.4.3(a)" (42 U.S.C. § 6295(j)), which sets forth additional standards for showerheads and flow rate testing.

11. In addition to the flow rate restrictions imposed under 10 CFR Part 430.32(p), the federal regulations promulgated pursuant to the EP Act (specifically 16 C.F.R. Part 305.16) require that showerheads "bear a permanent, legible marking indicating the flow rate," that they be marked "A112.18.1M" to reflect compliance with the applicable ASME (American Society of Mechanical Engineers) standard, and that the packaging for all showerheads reflect the flow rate and be marked with "A112.18.1M."

12. 42 U.S.C. § 6302(a) prohibits the distribution in commerce of showerheads that do not comply with the EP Act's energy conservation and labeling requirements. Further, 42 U.S.C. § 6303(c) declares written representations in violation of 42 U.S.C. § 6293(c) (prohibiting unsupported or false written statements regarding product water use) to be an unfair or deceptive act or practice.

13. The flow rate restrictions and related requirements imposed by the EP Act were enacted to serve the important public interests of water conservation and environmental protection.

14. Compliance with the flow rate restrictions of the EP Act impacts the characteristics of showerheads by limiting the amount of water expelled by the showerhead at a given water pressure over any given period of time. Successful showerhead manufacturers, such as Interlink, sell products designed to achieve excellent performance at lower flow rates. The production of high-performing compliant products involves research and the expenditure of resources that, ultimately, increases the cost of such products.

15. Manufacturers that illegally sell non-compliant, high-flow showerheads gain an unfair competitive advantage over compliant manufacturers by (a) avoiding the cost of producing compliant showerheads that perform to levels acceptable to consumers, which allows them to sell

at lower prices; and (b) by misleading consumers into believing that the showerheads they sell are competitive with or superior to compliant showerheads (because the high water pressure of their showerheads provides a better showering experience) when, in fact, the performance of their non-compliant showerheads is attributable to an unlawfully high flow rate. The false perception of high performance created by undisclosed illegally high flow rates lead to positive product reviews, which, in turn, increase product sales (particularly online), resulting in the seller's further unjust enrichment from its wrongdoing.

<u>Defendant Misrepresents the Flow Rate of Its Products</u>

16. The Online Marketplaces where the parties sell their products are among the largest on the internet, each serving literally millions of potential consumers.

17. With respect to each of the Online Marketplaces, Interlink is, if not the leading seller of showerheads, among the leading sellers. For instance, approximately 90% of the showerheads sold on Groupon are Interlink's showerheads.

18. Defendant sells its Oasis brand showerheads, including model numbers 700R, 700S and 700SSL (collectively, the "Oasis 700 Showerheads"), on one or more of the Online Marketplaces and, on information and belief, elsewhere.

19. Defendant prominently represents on its website and in other advertising and promotional materials that the Oasis 700 Showerheads have a maximum water flow rate of 2.5 gallons per minute (gpm) at 80 pounds per square inch (psi) of water pressure when, in fact, those showerheads have a maximum flow rate of almost double the advertised rate. Defendant's advertising and promotional materials make the false assertion that its Oasis 700R showerhead "limits water usage to 2.5 gallons per minute" so that customers can "enjoy a superb shower experience while avoiding water waste." Likewise, with respect to the Oasis 700S, Defendant

falsely represents that the showerhead "delivers a strong rainshower effect while consuming only 2.5 gallons of water per minute (your wallet will thank you)." Defendant makes similar false statements in its advertising and promotional materials for the Oasis 700SSL. Examples of Defendant's advertising and promotional materials making the foregoing false claims are attached as Exhibit A.

20. Interlink has purchased each of the Oasis 700 Showerheads and found that each lacked a 2.5 gpm flow regulator, which would restrict water flow through the showerheads to 2.5 gpm. Images showing the absence of a flow regulator in the Oasis 700 Showerheads are attached as Exhibit B. Further, testing of those showerheads confirmed that their flow rates far exceed the 2.5 gpm Defendant advertises.

21. On information and belief, Defendant sells other showerhead models that make the same false claims.

22. The damaging effect of Defendant's misrepresentations is evident from online customer reviews of Defendant's products. For instance, one customer on Overstock.com wrote, regarding the Oasis 700-R model, that it "seems like way more water is coming out than there is." Of course, that comment stems from the fact that far more water was, indeed, coming out of that customer's showerhead than advertised. Another customer lauded the product's "water pressure" and gave it a positive review. Similar comments are reflected in Amazon.com customer reviews, where one reviewer wrote that "the pressure is intense," and another observed, "The water flow from this shower head was way better" than the reviewer's previous showerhead. Copies of the web pages reflecting the reviews referenced in this paragraph are attached as Exhibit C. These reviews, which are driven by Defendant's deceptive practices, tend to increase Defendant's market share and drive further sales to the detriment of Interlink.

23. On information and belief, Defendant has sold a large number of showerheads advertised and promoted with a false indication of flow rate on the Online Marketplaces and elsewhere.

<u>Defendant Misrepresents the Nature of Its Showerheads to Gain Access to the Online Marketplaces</u>

24. In additional to misrepresenting the flow rate of its products, Defendant also misrepresents that its products comply with applicable laws, despite that they violate the EP ACT, in order to gain access to the Online Marketplaces.

25. Each of the Online Marketplaces serves as a proxy for the millions of customers who shop on their respective websites. Each controls the gateway to its marketplace and, in that regard, represents the customers who shop there in their dealings with merchants such as Defendant. Further, on information and belief, the fact that a product is sold through or permitted to be sold on a reputable online marketplace, such as the Online Marketplaces, has the tendency to lead consumers to believe that, at a minimum, the product complies with applicable laws and regulatory standards. Amazon.com explicitly recognizes as much, and includes the following policy statement on its website, which is incorporated into the Amazon seller Participation Agreement:

> Restricted Products
>
> Customers trust that they can always buy with confidence on Amazon.com. Products offered for sale on Amazon.com must comply with all laws and regulations and with Amazon's policies. The sale of illegal, unsafe, or other restricted products listed on these pages, including products available only by prescription, is strictly prohibited.

*See* Exhibit D.

26. In order for Defendant to obtain exposure of its products to customers shopping on the Online Marketplaces, Defendant had to make certain promotional representations

7

regarding the nature of the products. For instance, Groupon required defendant to represent that its products are "manufactured, stored, packaged, labeled, supplied and delivered or shipped (as applicable), in accordance with all applicable international, federal, state and local laws and all executive orders and rules and regulations issued thereunder." A copy of the Groupon vendor Terms & Conditions reflecting the representations made by Defendant are attached to this Complaint as Exhibit E. Wayfair required Defendant to specifically warrant that (1) it would "comply with and ensure that all merchandise comply with all product . . . testing, and certification requirements under applicable laws . . . regulations . . . or other requirements now or hereafter in effect, of any government authority of competent jurisdiction." A copy of the Wayfair Supplier Agreement and Standard Terms is attached as Exhibit F. In order to gain access to Amazon, sellers must represent and agree that they will comply with all applicable laws, statutes, and regulations, and that their products comply with all laws and regulations and with Amazon's policies. A copy of the Amazon seller Participation Agreement is attached as Exhibit G.

27.     To gain access to the Online Marketplaces, Defendant represented that its showerheads comply with the law when, in fact, they violate the EP Act and are marketed using deceptive advertising and promotional materials.

28.     Defendant continues to misrepresent the nature of its showerheads in order to unfairly compete with Interlink.

29.     Defendant's representations that its showerheads have a 2.5 gpm flow rate and comply with all applicable laws and regulations were and are literally false.

30.     The flow rate identified in connection with Defendant's showerheads was material to consumer's purchasing decisions concerning those products.

31. The question of whether Defendant's showerheads complied with the law was material to each of the Online Marketplace's permitting or participating in the sale of Defendant's products through their respective websites, and to consumer's purchasing decisions concerning those products.

32. Defendant knew or reasonably should have known that its showerheads have a greater than 2.5 gpm maximum flow rate and that they do not comply with the EP Act.

33. Defendant's misrepresentation of its product flow rate and compliance with the law is deceptive and, in fact, has a tendency to deceive consumers and the Online Marketplaces.

34. Absent Defendant's misrepresentations, it would not have made its illegal sales in competition with Interlink and it is likely that Interlink would have made the sales to customers that Defendant made.

35. Defendant's misrepresentations regarding the nature of its showerheads unfairly enhance Defendant's market position and demand for its products.  The illegally high flow rates of Defendant's showerheads positively influence online customer reviews of the showerheads which, in turn, have the tendency to increase sales of Defendant's showerheads, reducing Interlink's sales and unfairly enhancing Defendant's ability to compete with Interlink for future sales.

36. Nowhere in Defendant's product information is it disclosed that Defendant's showerheads violate U.S. law.  To the contrary, Defendant sells its showerheads representing that the showerheads were fully compliant, which they clearly are not.

37. Defendant's sale of its showerheads in the United States necessarily implies that the showerheads have been manufactured in accordance with and comply with the law.

38. On information and belief, environmental compliance is material to a significant number of consumers who have purchased Defendant's showerheads.

39. On information and belief, consumers who purchased Defendant's showerheads would not have done so had they known the true nature of Defendant's showerheads.

40. On information and belief, Defendant would not have been allowed to sell its showerheads on the Online Marketplaces had they known of the illegal nature of the Showerheads.

41. Through its unlawful misrepresentations and omissions, Defendant has unfairly enhanced its goodwill in the market and market position as compared to Interlink, has unlawfully deprived Interlink of sales and customer goodwill, and has otherwise unfairly competed with Interlink.

42. Absent Defendant's unlawful misrepresentations and omissions, it was very likely that the consumers who purchased Defendants' products would have purchased Interlink's products.

43. Defendant's foregoing conduct described in this Complaint was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a) entitling Interlink to an award of enhanced damages and reasonable attorney's fees.

44. The acts of Defendant described herein have been and continue to be in bad faith and conscience and in deliberate disregard of Interlink's rights and with the intention of depriving Interlink of monies that Interlink would otherwise receive.

45. Through the foregoing conduct described in this Complaint, Defendant has acted in wanton and willful disregard of Interlink's rights such that Interlink is entitled to an award of punitive damages.

## COUNT I
### (False Advertising - 15 U.S.C. § 1125 (a))

46. Plaintiff restates and realleges the allegations of paragraphs 1-45 as if fully set forth herein.

47. Through the foregoing conduct, including Defendant's (a) misrepresentations regarding its product flow rate; and (b) misrepresentations and omissions with respect to the legality of its showerhead products, Defendant made and continues to make false or misleading statements and omissions as to the nature and qualities of its showerheads and in the advertising and promotion of those showerheads.

48. Defendant's false and misleading statements and omissions regarding its showerheads are literally false, deceived and continue to deceive consumers purchasing Defendant's showerheads and the Online Marketplaces, and otherwise have the tendency to deceive potential purchasers of Defendant's showerheads.

49. The deception brought about by Defendant's false and misleading statements and omissions detailed in the preceding paragraphs was and is material in that those statements and omissions likely influenced and will continue to influence purchasing decisions concerning Defendant's showerheads.

50. Defendant's goods travel in interstate commerce.

51. Defendant's deceptive conduct has caused and will continue to cause immediate and irreparable injury to Interlink, including declining sales, unfair price competition and loss in market share, for which there is no adequate remedy at law.

52. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs and any other relief the court deems just.

## COUNT II
### (Unfair and Deceptive Practices – N.J.S.A. § 56:8-2 *et seq*.)

53. Plaintiff restates and realleges the allegations of paragraphs 1-52 as if fully set forth herein.

54. Defendant's showerheads are consumer goods.

55. Through the foregoing conduct in connection with the sale, advertisement and promotion of its showerheads, Defendant has used and employed unconscionable commercial practices, deception, fraud, and misrepresentations concerning the nature of its showerheads and has knowingly concealed, suppressed, or omitted material facts concerning the nature of its showerheads with intent that potential purchasers rely upon such concealment, suppression or omission.

56. As a result of the foregoing conduct, Interlink has suffered ascertainable loss including lost sales and lost market share.

57. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs, punitive damages and any other relief the court deems just.

## COUNT III
### (Common Law Unfair Competition)

58. Plaintiff restates and realleges the allegations of paragraphs 1-57 as if fully set forth herein.

59. Through the foregoing conduct, Defendant has committed common law unfair competition.

60. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunctive relief, treble damages, disgorgement of profits, attorney's fees, costs, punitive damages and any other relief the court deems just.

## COUNT IV
### (Tortious Interference with Prospective Economic Advantage)

61. Plaintiff restates and realleges the allegations of paragraphs 1-60 as if fully set forth herein.

62. Through the foregoing conduct, Defendant intentionally and improperly interfered with Interlink's prospective sales to customers.

63. By deceiving customers into believing that its illegal showerheads have a maximum flow rate of 2.5 gpm and that they comply with the law, Defendant gained access to the Online Marketplaces and otherwise made sales to consumers, unlawfully preventing Interlink from selling its showerheads to those customers.

64. It is highly likely that, absent Defendant's wrongful and deceptive conduct, Interlink would have made the sales to customers that Defendant made.

65. Accordingly, Interlink is entitled to judgment awarding it preliminary and permanent injunction relief, damages, punitive damages and any other relief the court deems just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

I. That Defendant, its officers, agents, servants, employees, attorneys, privies, subsidiaries, divisions, successors and assigns, and all persons and organizations in active

concert, participation or combination with any of the foregoing be permanently enjoined from and/or Ordered to:

    A. Cease making or employing any false or misleading statements or omissions concerning its products' flow rate and compliance of its products with applicable statutes or regulations;

    B. Immediately take all steps necessary to remove from the market all of Defendant's showerheads packaged with or otherwise advertised or promoted with materials containing false statements regarding flow rate;

    C. Immediately take all steps necessary to remove from the market all of Defendant's showerheads that do not comply with applicable statutes and regulations, including without limitation, the EP Act, and otherwise stop selling showerheads that do not comply with applicable laws;

    D. Provide notice to all customers and resellers of Defendant's showerheads disclosing that the showerheads to not comply with applicable regulations and offering a full refund for all quantities purchased; and

    E. Cease selling showerhead products for a period sufficient to correct for any gains in market share and goodwill attributable to the misrepresentations and omissions concerning Defendant's product flow rates and compliance with applicable laws.

    II.    That Plaintiffs obtain the following relief:

    A. An accounting and disgorgement of all profits Defendant has gained through the sale of showerheads as to which Defendant misrepresented the flow rate or compliance with applicable laws;

    B. Compensatory damages in an amount not less than $4 million;

    C.  Treble damages;

    D.  Reasonable attorneys' fees and costs;

    E.  Punitive damages in an amount not less than $12 million; and

    F.  Any other relief in Plaintiff's favor that the court deems just and proper.

Dated: April 27, 2015                Respectfully submitted,

                                        The Law Office Of
                                        JASON B. LATTIMORE, ESQ. LLC

                                        By  s/ Jason B. Lattimore
                                            Jason B. Lattimore
                                            55 Madison Avenue, Suite 400
                                            Morristown, NJ 07960
                                            Telephone: (973) 998-7477
                                            Facsimile:  (973) 264-1159

                                            *Attorneys for Plaintiff*
                                            *Interlink International Products, Inc.*

## **DEMAND FOR JURY TRIAL**

       Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable by jury.

Dated: April 27, 2015                Respectfully submitted,

                                          The Law Office Of
                                        JASON B. LATTIMORE, ESQ. LLC

                                        By  s/ Jason B. Lattimore
                                           Jason B. Lattimore
                                            55 Madison Avenue, Suite 400
                                            Morristown, NJ 07960
                                            Telephone: (973) 998-7477
                                            Facsimile:  (973) 264-1159

                                            *Attorneys for Plaintiff*
                                            *Interlink International Products, Inc.*

## **CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

The undersigned hereby certifies that, to the best of his knowledge, this matter is not the subject of any other action pending in any court, or any pending or contemplated arbitration or administrative proceeding.  The undersigned further certifies that, to the best of his knowledge, there are no additional parties who should be joined in this matter.

Dated:  April 27, 2015                                         Respectfully submitted,

                                                                              The Law Office Of
                                                                              JASON B. LATTIMORE, ESQ. LLC

                                                                              By  s/ Jason B. Lattimore
                                                                                    Jason B. Lattimore
                                                                                    55 Madison Avenue, Suite 400
                                                                                    Morristown, NJ 07960
                                                                                    Telephone: (973) 998-7477
                                                                                    Facsimile:  (973) 264-1159

                                                                              *Attorneys for Plaintiff*
                                                                              *Interlink International Products, Inc.*